T.C. Summary Opinion 2007-191


UNITED STATES TAX COURT


CAROLYN D. FENDERSON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18961-05S.                Filed November 13, 2007.


Thomas I. Hausman and Patricia M. Ritzert, for petitioner.

Anita A. Gill, for respondent.


CARLUZZO, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, in effect for the relevant period.

Respondent determined a $22,584 deficiency in petitioner's 2002 Federal income tax. The issue for decision is whether petitioner is entitled to a deduction for a loss from her real estate activities. The resolution of the issue depends, in part, upon whether section 469(c)(7) applies to petitioner for the year in issue.

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed in this case, petitioner resided in Ohio.

In January 2000, petitioner started employment as an account manager for Symantec Corporation, a company that markets a popular computer security software program (Symantec). She was so employed during 2002, and although expected to develop new business, she was primarily responsible for servicing eight existing customers. To that end, she regularly kept in contact with those customers and was always available to them in order to ensure that any problems or concerns any might have would be properly and promptly resolved. If the customer's problem were of a technical nature, petitioner would arrange for one or more Symantec software engineers to get involved.

During the first year of her employment with Symantec, petitioner frequently traveled to customers and potential

customers in Cleveland and Pittsburgh. She spent at least 50 hours a week doing so.

Petitioner's compensation from Symantec was composed of a base salary, stock options, and sales commissions based on sales of software licenses. Depending on the size and nature of the sale transaction, a series of licenses involved in a single sale might be "rolled out" over a period of years following the year of the sale. Her commissions were paid when the "roll out" occurred. As a result, petitioner received commissions in one year that related to sales made during a previous year or years.

In 2002 petitioner's compensation from Symantec totaled $186,487. Some of the commissions included in that amount relate to sales of software licenses made in years prior to 2002. According to petitioner, she spent about 15 hours a week working for Symantec during 2002. She maintained a calendar that tracked her activities and appointments in connection with her employment at Symantec, which ended during 2003.

As of the close of 2002 petitioner owned several parcels of residential real estate that she held for rent, or rented during that year (collectively, the rental units). Some of the rental units were leased in accordance with Federal or State programs that provided rent subsidies to the tenant(s)/lessee(s) (the rent subsidy programs). On her timely filed 2002 Federal income tax

return, the rental units are identified by addresses, as follows:
(1) East 149th St.; (2) Euclid Hgts. Blvd.; (3) Wickford Rd.;
(4) Continental; (5) E. 97th; (6) Parkhill; (7) E. 131st St.;
(8) Parkgate; (9) Graham; and (10) Endura.[2]

For the most part, and generally speaking, petitioner was
responsible for renting and managing the rental units. She
advertised when a unit was available. She conducted and attended
open houses showing the units. She arranged for utilities to be
turned on when necessary. She requested and reviewed credit
reports with respect to prospective tenants. She painted and
cleaned the units when necessary, and she arranged for repairs to
be made in those situations when she was not competent to make
the repairs herself.

In addition to activities related to a specific rental unit,
petitioner attended real estate auctions and reviewed listings of
real estate for sale by Government authorities and private
sellers. From time to time, she also met with officials from the
Federal or State Government agencies that administered the rent
subsidy programs.

Separate and apart from the calendar that petitioner kept in
connection with her employment at Symantec, petitioner maintained

---

[2] At trial petitioner explained that the Graham and Endura
rental units were actually owned by her brother.

a calendar in which she recorded her activities related to the rental units (petitioner's calendar). Some of the entries made in the calendar relate specifically to one or another of the rental units; many entries merely show the words "auction", or "sheriff's listings". Some of the entries appear to be reminders, or relate to upcoming events, rather than a record of an event that actually occurred. For example, on those days when the word "auction" is noted, it cannot be determined whether petitioner actually attended an auction, or merely marked her calendar to show that the event was scheduled on that date. Similarly, many notations show a 4-hour period for "gas" or "electric" with respect to one or another of the rental units. Again, it cannot be determined whether petitioner actually spent 4 hours on that date waiting for someone from one utility company or another, or whether petitioner merely noted the date and time frame when the utility company employee was scheduled to arrive. Some of the entries contained in petitioner's calendar are clearly personal in nature. For example, on July 4, petitioner noted "Carol's house, take salad and merlot". On other dates, a person's name is listed, but the relevance of that person's involvement, if any, with a particular rental unit cannot be determined from the entry on the calendar.

Petitioner's 2002 tax return includes five Schedules E, Supplemental Income and Loss, on which the rental income and expenses of the rental units are reported (the Schedules E).[3] Taking into account that income and those expenses, the Schedules E show an aggregate loss of $57,906 (the rental loss) which is deducted from the other income shown on petitioner's return.

In February 2005, prior to the completion of the examination of petitioner's 2002 return, petitioner submitted a second 2002 return. This second return, which was not processed by respondent, included a Schedule C, Profit or Loss From Business, but no Schedule E. The income and expenses originally reported on the Schedules E are shown on the Schedule C. Otherwise, there is no difference between the two returns. In a letter dated February 10, 2005, to respondent, petitioner stated that she wanted to "amend" her 2002 return, and further that she "[wished] to utilize the affirmative election" of section 469(c)(7)(A). It is not clear whether the letter and the second return, which was not processed by respondent, were submitted together.

In the notice of deficiency that forms the basis for this case, the rental loss deduction was disallowed because, according to an explanation contained in the notice, "rental activities of any kind, regardless of material participation, are considered

---

[3] On one of the Schedules E petitioner aggregated the amounts shown on the other four.

passive activities unless the requirements of section 469(c)(7) * * * are met". Other adjustments made in the notice of deficiency are not in dispute.

## Discussion

In general and as relevant here, an individual is not entitled to a deduction for a passive activity loss incurred during the taxable year. Sec. 469(a). A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1). A passive activity is any activity which involves the conduct of any trade or business and in which the taxpayer does not materially participate. Sec. 469(c)(1). For this purpose, a "trade or business" is generally defined as any activity in connection with a trade or business or any activity for the production of income under section 212. Sec. 469(c)(6).

In general, a rental activity is treated as a passive activity regardless of whether the taxpayer materially participates. Sec. 469(c)(2),(4). If a taxpayer is described in section 469(c)(7), section 469(c)(2) does not apply, and the taxpayer's rental activity, if conducted as a trade or business or for the production of income, is a passive activity unless the taxpayer materially participates in the activity. Sec.

469(c)(1); <u>Fowler v. Commissioner</u>, T.C. Memo. 2002-223; sec. 1.469-9(e), Income Tax Regs.

The parties disagree on a number of different points concerning the application and relevance of section 469 to petitioner's rental activities. Among those disagreements, they dispute whether section 469(c)(7) applies. Petitioner claims that section 469(c)(7) applies to her for the year in issue, and therefore section 469(c)(2) does not apply for that year; respondent disagrees. Under the circumstances, if section 469(c)(7) does not apply to petitioner for 2002, then she is subject to section 469(c)(2) for that year, which means that the rental loss is a passive activity loss and she is not entitled to the rental loss deduction here in dispute.

Section 469(c)(7) does not apply to a taxpayer unless, in addition to another requirement, "more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates". Sec. 469(c)(7)(B)(i). In this case, the equation contemplated by the statute requires that we measure the extent of the personal services that petitioner performed as an employee of Symantec against the personal services petitioner performed in real estate trades or businesses in which she materially participated.

The parties proceeded as though the extent of personal services performed in a trade or business is measured by hours. We do likewise and start with petitioner's trade or business as an employee of Symantec. According to petitioner, she spent approximately 15 hours per week working for Symantec. She described in general terms how that time was spent, but she provided little in the way of specifics. Although she maintained a written record regarding her activities as an employee of Symantec, the written record was not made available to the Court.

Petitioner's compensation from Symantec, the lack of any written evidence corroborating her testimony on time she claims to have spent performing personal services for Symantec during 2002, the extent of her obligations to her customers as an account manager of Symantec, and the amount of hours she spent working for Symantec in previous years strongly suggest that she spent more than 15 hours per week performing personal services for Symantec during 2002, but the suggestion is no substitute for evidence. As it stands, the only evidence on the point is petitioner's testimony. Assuming, without finding, that petitioner's estimate is accurate, we proceed as though petitioner spent 780 hours (15 hours per week x 52 weeks) performing services as an employee of Symantec during the year in issue.

Next we turn to the personal services performed by petitioner in real estate trades or businesses in which she materially participated.

For purposes of section 469, a taxpayer materially participates in an activity only if the taxpayer is involved in the operation of the activity on a basis which is regular, continuous, and substantial.[4]  Sec. 469(h)(1).  We are satisfied that with respect to each real estate activity involving a rental unit, petitioner's "participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year".  Sec. 1.469-5T(a)(2), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988).  Consequently, for purposes of section 469, petitioner may be treated as having materially participated in the operation of each of the rental units, and we proceed as though she did.[5]

---

[4]  Circumstances that, in and of themselves, establish material participation in a given activity can be found in sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988).

[5]  Argument could be made that for purposes of sec. 469, a taxpayer's participation in an activity is not treated as "regular, continuous, and substantial" during any year if the individual participates in the activity for 100 hours or less during that year.  See Oberle v. Commissioner, T.C. Memo. 1998-156; sec. 1.469-5T(b)(2)(iii), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).  Under the circumstances we need not decide the point.

According to petitioner, she performed more than 100 hours of personal services in connection with each of the rental units. In support of her claim in this regard, she submitted a schedule of the hours spent on each unit (Exhibit 3-J). Exhibit 3-J shows a total of 1,062.18 hours spent on all rental units. The exhibit itself is a summary of a document that shows the date, nature of the activity, and time spent on a property-by-property basis (Exhibit 4-P). Exhibit 4-P, in turn, is, according to petitioner, based upon items listed in petitioner's calendar. Although the calendar was prepared contemporaneously with the events recorded in it, Exhibit 3-J and Exhibit 4-P were prepared years later during either the examination of petitioner's 2002 return or in preparation for this proceeding.

In reliance on her calendar and the above-referenced exhibits, petitioner argues that more than one-half of her time spent in performing personal services in trades or businesses during 2002 was spent in performing personal services in real estate trades or businesses (1,062.18 hours performing personal services in her real estate trades or businesses versus 780 hours performing personal services as an employee of Symantec). As petitioner views the matter, she has satisfied the requirements of section 469(c)(7)(B), and therefore section 469(c)(2) does not apply. Sec. 469(c)(7)(A).

Petitioner's view, however, presupposes that the amounts of hours shown on Exhibits 3-J and 4-P are supported by entries made in her calendar. This does not appear to be the case.

A number of inconsistencies between items shown on petitioner's 2002 return, her calendar, and the exhibits were brought out during petitioner's cross-examination at trial. Furthermore, upon careful review of those documents, we are unable to reconcile estimates of time shown on Exhibits 3-J and 4-P with entries made in petitioner's calendar. On many dates, the estimate of time spent on a particular activity exceeds the amount of time shown on that calendar for that date. For example, on Exhibit 4-P petitioner shows more than 9 hours spent performing various types of services at Parkgate on January 3, 2002. The hours presumably are incorporated in the total hours shown for that property on Exhibit 3-J. Entries on her calendar for that date, however, do not support the number of hours or the type of activities described in Exhibit 3-J.

A taxpayer can establish personal services performed in an activity by any reasonable means. Reasonable means "may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries." Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).

Among Exhibit 3-J, Exhibit 4-P, and petitioner's calendar, we find petitioner's calendar to be the only record that complies with the above regulation.[6] For purposes of that regulation, "ballpark [guesstimates]" contained in postevent records, such as Exhibits 3-J and 4-P are entitled to little, if any, weight in determining the extent of a taxpayer's participation in an activity. Bailey v. Commissioner, T.C. Memo. 2001-296; Carlstedt v. Commissioner, T.C. Memo. 1997-331; Speer v. Commissioner, T.C. Memo. 1996-323; Goshorn v. Commissioner, T.C. Memo. 1993-578.

We have carefully and repeatedly reviewed petitioner's calendar. After doing so, we find that the estimates of time spent on specific properties shown in Exhibits 3-J and 4-P are overstated, at least to the extent as follows:

---

[6] This is not to suggest that petitioner's calendar is not without problems. Petitioner explained that some entries made in the calendar were made before the activity occurred, and she did not adjust the entries later to reflect the actual duration of the activity. See, e.g., Fowler v. Commissioner, T.C. Memo. 2002-223.

Furthermore, although the calendar contains many entries related to petitioner's rental activities, such as evictions, collecting rent, inspections, meeting with contractors, mediation, auctions, credit checks, listing reviews, screening of prospective applicants, etc., there is nothing to connect these activities to a specific rental unit or rental activity. Similarly, the calendar contains numerous entries that do not, in and of themselves, show how the activity was related to a rental activity. For example, some entries on the calendar show only the name of an individual and a phone number. Other entries simply show the address of a rental unit. Some entries are obviously not related to any rental activity. Finally, there are some entries that are illegible.

| Rental Unit | Hours per Exhibits 3-J and 4-P | Hours per calendar (maximum) |
|---|---|---|
| East 149th St. | 119.57 | 110 |
| Euclid Hgts Blvd. | 120.81 | 80 |
| Wickford Rd. | 101.03 | 45 |
| Continental | 153.53 | 117 |
| E. 97th | 115.57 | 80 |
| Parkhill | 106.95 | 110 |
| E. 131st | 133.73 | 60 |
| Parkgate | 103.49 | 60 |
| Woodstock | 107.50 | 97 |
| Total hours | 1,062.18 | 759 |

Relying upon the entries in petitioner's calendar, we find that petitioner spent 759 hours performing personal services in connection with her real estate trades or businesses in which she materially participated during 2002.[7]  Because petitioner spent at least 780 hours performing personal services as an employee of Symantec during 2002 she does not qualify for the provisions of section 469(c)(7).  This means that section 469(c)(2) operates to treat all of petitioner's real estate activities as passive activities regardless of whether she materially participated in any of them.

It follows that under the provisions of section 469(a) petitioner is not entitled to the rental loss deduction, and respondent's disallowance of that deduction is sustained.

_____

[7]  Whether the hours listed for Woodstock, a property not included on any of the Schedules E, should be taken into account in the analysis is a moot question.  The outcome remains the same whether hours are included or ignored.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.